Good afternoon. This first case for the afternoon is 4-14-0224. In re the Marriage of Rachel Walden and Scott Walden. Present for the appellant is Attorney Ruth Wyman and for the appellee, Attorney David Cox. Ms. Wyman, are you ready to proceed? I'm requesting an additional 5 minutes on rebuttal please. May it please the court and counsel. This is an issue of division of assets and debts and some other ancillary issues not dealing with custody in a judgment of dissolution or divorce case out of Piatt County. There are several issues that are raised on appeal in this case. The simplest issue, which I'd like to address first because I believe it's the simplest, is the issue of the dependency deductions. Prior to a hearing on the entry, a hearing on the remaining ancillary issues, the judge in this case, Judge Flannel, had entered an order and that's part of the appendix that granted dependency deductions for the parents. Granting the father, my client, Scott Walden, the dependency deductions for two of the children and granting mother one of those dependency deductions. Without any motion to reconsider, with any motion to modify dependency deductions, without any request for any evidence on that issue, Judge Flannel in his judgment on the ancillary issues entered November 15, 2013, which is the subject of this appeal. Modified sua sponte that dependency deduction. We believe that was an abuse of discretion. Counsel, let me ask you about that. You're absolutely correct in that that order was entered, but I'm wondering, since this was a judgment on ancillary issues, that that was not included? I mean, basically they had resolved custody and they were asking the court to resolve the property and the other issues, so you don't believe it was appropriate for the court to believe that that was before it? No, Your Honor, I don't believe that was before it. The order that was entered previously on this, and again, that's A14 and the record C15, the family law, the conference conducted in chambers and then the court rules this. And again, this is at A14. The petitioner, that's Ms. Walden, Rachel Walden, granted income exemption for Devin for 2012 and future years. Respondent, my client Scott, was awarded the income exemptions for Charlie and Riley for 2012 and future years. Not at any point in any further, after this ruling was done, was there ever a motion filed by Rachel to reconsider or to modify this dependency deduction, though dependency deductions are an issue of child support. There was never a request to modify the dependency deductions, nor when the issue of setting the hearing on the judgment on ancillary issues, which was a bit convoluted because first the judge had said, well, make your proposals, and then we came back, we made the proposals, there were objections, and so then the judge set a hearing, which was then held October 3, 2013. At no point was there any request, suggestion, statement that that issue would be reconsidered. Other issues that were in front of us, there were statements and it was clear that because of the pending motions, the petition for adjudication of indirect civil contempt that Rachel had filed on child support, the motion to modify child support that Scott had filed because he had lost his job, and then the issues of the division of assets and debt collection. And that's what I'm getting at. I mean, he had this motion regarding his loss of his employment. Was it not reasonable for the court to determine, well, because of change in circumstances or the facts as alleged, that I need to revisit that issue? Well, the court could have announced that it was going to revisit that issue because of this, but there was never any request to that. And furthermore, the judge in his judgment on ancillary issues did not agree to allow my client to reduce his child support based on it. So I could understand a party saying, hey, he's no longer paying the child support he was. He's only paying based on his unemployment income. That's not enough to support the kids. Mom should be able to get the extra $1,000 or $2,000 per kid for dependency deductions. But that isn't even the case. He still, my client, has still had to pay this additional child support because he never got to reduce his child support even though his income was reduced. But it's still possible that the judge could have determined that it was more beneficial for the mom to be able to claim them because your client was no longer working, irrespective of whether or not the court decided to allow him to reduce his child support. The court certainly could have, but there was nothing in any part of the record or in the proceedings leading up to that hearing on the ancillary issues on October 3, 2013, that alerted anyone to the judge or either the parties that this was an issue that was going to be reconsidered because the court had already made that decision. And the other issue is we are missing three days' worth of hearings, the transcripts, right? The custody hearings. The custody transcripts were not included. That's correct because custody was not being appealed. So the only issues that were heard in the custody proceedings, pursuant to the rules where custody has to be decided first, are the custody proceedings. That's correct, Your Honor. And do we have, I know there's a transcript of, I believe, one day on the other issues. Were there any other hearings on the other issues? Those weren't. It was different than I'm used to handling it because I practice more in Champaign County and it's just done very differently there. But on this, at first, and I think the first transcript describes this, that the judge said, all right, I want you to turn in, or there was, each of the parties turned in a proposed division of assets and debts. And then we turned in also documents, supplementary, and it was mostly the child support documents. Mr. Cox objected to that. The judge granted that objection but allowed leave at my oral request to present evidence, at which then October 3, 2013, we were allowed 45 minutes to present all the evidence on all of the pending issues. Those pending issues are what I anticipated, and obviously not the tenancy deductions, since no notice had been given of that issue. So perhaps it's not as simple an issue as I had anticipated, arguing, but that is essentially that argument. There was no notice given that that issue was up for any reconsideration and just a sua sponte decision by the judge, absent any request or suggestion by Rachel Walden or by us or by the court, that that issue was to be reviewed. Another issue is this issue of the child support. There had been, it's not clear in paragraph B of this judgment, filed November 15, 2013, where the judge says the court finds the respondent has a child support arrearage, respondent being my client, which after credit for direct payments to the petitioner is found to be $3,225.29. Now, is that giving the full credit to my client for the money gram and other money orders given to Rachel Walden, hand-delivered between December 21, 2010, when the agreed order was entered, agreeing that my client would pay 32 percent of his net income as child support, between then and one year later, December 5, 2011, when the child support order of withholding was entered? The testimony was, and the request to admit, request to admit facts, which were granted as well, and that's part of the request to admit facts, was starting at A15 with regard to paragraphs 4, exhibit, which references exhibit E, but he had provided, Scott had provided direct payments of $4,118.51. Those are on the support order or the money orders that were hand-delivered to Rachel Walden. Now, the documents that were entered as exhibits and admitted as exhibits have her signature having received those. So this was prior to an order of withholding being entered. And I believe, my understanding is that the other side is objecting to those admissions that was admitted under the request to admit facts and request to admit the genuineness of documents as to those admissions. It's not clear when the judge says that there's a rearage of 3,225.29 if he's appropriately giving credit of that $4,118.51 given as money orders prior to the order of withholding being entered or not. Counsel, I'm not sure I understand your response. Ultimately, the parties resolved the question of child custody, is that correct? Yes, sir. The three-day trial in September and October 2012 related to the remaining ancillary issues? The parties resolved the issue of custody not because Mr. Cox and I got together and agreed his client would have it. It was that those three days of evidence and testimony and then the judge decided and issued a ruling that Rachel, the mother, would have custody of the children and my client would have reasonable visitation. That issue was not appealed. Now, I suppose my question is this. For three days' worth of testimony, there was no testimony pertaining to any of these ancillary issues? It was just all custody? Yes, sir. Also, you are arguing on appeal that the court erred by allocating your client 80% of the marital debt and only 20% to Rachel? Yes, sir. Whereas Mr. Cox is arguing on appeal that the court erred by considering, as part of this marital debt, the money your client owed in the criminal conviction? Yes. In the event that we were to agree with Mr. Cox, well, let me put it back off. Do you think part of the 80% marital debt that was accorded to your client was because the court was taking into account as marital debt the criminal conviction restitution? I don't know because in paragraph F of the judgment, that's page 8-2, the court says, in view of the court's order of distribution of assets, it is the court's finding and it is ordered that the respondent be responsible for 80% of outstanding indebtedness and the petitioner be responsible for 20% of outstanding indebtedness. The court, sorry, in the sentence prior says, at the beginning of paragraph F, with regard to the party's marital debts, court finds the evidence presented concerning ultimate responsibility for said debts is conflicting and due to the period of separation of the parties, difficult to individually assign responsibility. And then it says, therefore, that's why he's assigning it one on a percentage basis and then 80-20. So he never mentions that issue. It also brings up the other question, you have the issue of 80-20% and is that equitable? The next issue is, if the court agrees with that, and I'm not urging the court to agree with that, I think it should be closer to a 50-50, which 50 or which 80, which 20%? There are numerous debts further compounded by bankruptcy filed by my client during the pendency of these divorce proceedings, but there remain various, a certain amount of debts. I would estimate probably about still 80,000, sorry, still about $140,000 in debts that haven't been discharged because they're tax liens or other things that cannot be discharged that still have to be divided. My client has been paying on some of those debts. I don't believe Ms. Walden has been paying on any of those debts. And so when the judge says 80% goes and is to be paid by Scott, which 80% is he supposed to pay? There's that issue and it should have been delineated so that it's clear since it should be clear in this case as in most divorce cases to the court that the parties don't get along and can't decide, okay, I'm going to pay this debt and I'm going to pay that debt, then there needs to be an allocation so that one party doesn't pay some debts and the others say, oh no, that was the one I was going to be paying. Well, it could be in a case that you have an exhibit that's actually an agreed to exhibit that gives a total amount of the indebtedness, but that's not the case here. Well, my client and we presented in evidence part of, this was at 843, a list of all of the debts that my client, marital debts that my client was aware of, those were also part of a request to admit that was deemed admitted by the court, that listed what the total amount of debts were and that they were incurred during the marriage. That wasn't agreed to, Mr. Cox didn't agree to it, but it was part of the request to admit that was admitted by the court. Well, so when the court says 80-20 and the judgment says of all outstanding indebtedness, you don't have a single figure that both sides agree on represents the total outstanding indebtedness. You don't have that, you don't have one that says, okay, the Ohio tax lien, Rachel's going to pay that, and the Department of Employment Security, Scott's going to pay that, and then you've got this other one. You don't have that, and so since the debts aren't marital debts under the law and under the request to admit that's been deemed admitted, we don't have, we don't know which one is to pay which one. Did Scott's exhibit in regards to indebtedness include the restitution figure and Rachel's did not? Rachel did not submit one. Scott's did include the indebtedness, and I believe it's listed, the largest debt that's listed as well, and that is listed, it would be around an $80,000 figure. And so that, I'm not finding it right now, but I think it wouldn't be too difficult to find. I think it's listed as city of Champaign debt or Champaign debt because it was out of Champaign County. Judge Steinman brought up another issue that I'd like to also address, and that is with regard to this restitution issue or this criminal case issue in which Mr. Walden pled guilty to home repair fraud felony. He has various fines that he's had to pay and also approximately $80,000 in restitution. Mr. Cox had argued that under Capuso v. Capuso, the New York case from the Supreme, 12982-267, that my client should have to pay all of that. I would disagree with that suggestion or that interpretation. There are certain amounts of fines that a party can be required to pay as opposed to that being considered marital debt. But as the court in that New York case that Mr. Cox had cited states, and this is at 12982-267, sorry, that's at, or sorry, 517 New York 2nd, 952 at 959, or sorry, the section is at page 293. It says, viewing marriage as an economic partnership, we are in agreement with the proposition that spouses should share losses as well as profits, liabilities as well as assets incurred in the pursuit of marital wealth. Upon settling the accounts of the spouses, it should make no difference that wealth was acquired through unlawful means, whereas here the innocent spouse benefits therefrom. Now that's out. I was talking about tax liability, but they also said that penalties associated with the ex-husband's tax fraud would be attributable to him alone. Right. Yes, they did. But I believe, as I understand it, and as I read this case, this restitution, paying back in Scott's criminal case, he's ordered to pay approximately $80,000 in restitution to the claimed victims. That money that he received and now has to pay back went to benefit the family, went to benefit Rachel as well as the children. And that was disputed, right? Didn't Rachel testify that she never saw any of that money? She didn't get anything from the business? Well, she testified that Scott's, she testified contradictorily because she also testified that Scott put his paychecks into the joint checking account just as she put her paychecks in the joint checking account, and then she paid out bills. But after they separated, she claimed she didn't know about any of these bills that Scott was then continuing to pay on that had been forwarded to him. I'm sorry to have to go back to this issue, but I'm a little perplexed. Okay. In May, the trial court entered the judgment that dissolved the marriage, correct? Yes. And then I thought that in September and October, the trial court held a three-day hearing related to the ancillary issue. It was just to the custody issues. So this was prior to the Mathis decision, which said you can't enter it all piecemeal. So the parties in May of, what, 2012 got the divorce entered, just the grounds judgment, they're divorced. If they wanted to, as you tell your clients, you want to get married again, you're welcome to. Then we set the custody hearing. That was set then for that September timeframe and those three days. But I thought that when the court entered the judgment of dissolution that it reserved the issues of custody, visitation, child support, maintenance, and division of marital property. It did. It did. We did not get to the financial issues in that three-day trial in which the court then issued a few days later, or maybe it was a month later, issued its judgment on custody. I guess because I thought you had the three days of hearing and then you submitted written arguments or written suggestions and then the court reopened the proof. That's correct. And I'm sorry that it's confusing in the record. We had set the three days for what we thought would finish custody and all the financial issues. All we got to was custody. So then the judge says, fine, just issue written suggestions, proposals, written arguments on the financial issues. We did so. There was an objection because of the additional documents that were submitted. So the judge reopened it and set this for each side to have 45 minutes to argue on the financial issues. Argue and present evidence? Yes, argue and present evidence. I suppose it was just evidence. The judge said propose your proposed order and I'll pick which one I like. He didn't like either and so that's why he made that ruling then on November 13th. But nothing came up outside of custody at this three-day? That's correct. All right. Thank you, Ms. Wyman. You'll have time in rebuttal. Mr. Cox? If it pleases the court. Counsel, I always enjoy being involved in these proceedings. I think this case is obviously very important to the court and the parties and the litigants. I don't think it represents a lot of complicated issues to deal with, but I suppose that's for you to decide later. I'm going to be very brief. There are three issues I'd like to address. One is our argument that we're on appeal on and that is the criminal sanctions and whether Rachel Walden should have any liability. And then I want to respond briefly to some issues that Ms. Wyman has raised on appeal. Before I start on my remarks, I just want to indicate that, Justice White, my recollection is with yours, and I don't do this in any sarcastic way toward Ms. Wyman at all, but I think perhaps she's mistaken. I am reading from her reply brief. We're on page 11. It says, Rachel was awarded custody of the party's three minor children on May 29, 2012. We actually had a chamber conference, which should be noted in the record. Judge Flannel took it under advisement and he issued a written decision. So my recollection, while I don't have the record before me at the moment, is that the September hearings and October hearing dates were ancillary issues, and that's what the court was dealing with at that time. So I think there was three days of evidence on many of these issues. And not just related to custody. Certainly not just related to custody. Do you think the custody issue had already been resolved when that evidence was issued? I believe it had been resolved as of May 2012, Your Honor, on that date, I remember. That's my recollection without the record before me. Now, in terms of my remarks, obviously we have one argument on appeal at the moment, and that is that the court erred. We understand that the court has very broad discretion on these kinds of issues, but we believe the court erred when it assigned its criminal fraud restitution and fines to my client. And what's the evidence supporting that statement, that that is, in fact, what the court did? You know, I have to concede to the court that there's a certain lack of clarity in Judge Flannel's order in terms of whether or not it includes that amount. It certainly doesn't exclude that amount, and I think that the interpretation of counsel after the order was that it included anything that was pending, including the criminal sanctions. And isn't it also true that Judge Flannel was asked about that? Was it at the motion to reconsider or some subsequent hearing where that issue came up about, do we have to pay a portion of the fines? And he said something along the lines of, I've considered everything. Am I recalling that correctly? There was not extensive oral argument on the motion to reconsider. The judge indicated that he had read our written motions, and he made that comment, which, as you know, did not provide any further clarification. In your written motion, did you challenge the inclusion of the criminal fine on the basis of the marital debt? As I recall, we did, yes, Your Honor. So the issue was before the court, and you don't know whether it was part of the court's thinking? The court basically made a few cursory remarks, indicated that he was not going to reconsider, and denied the motion. Of course, doesn't the 80-20 split suggest that maybe the court did consider it and said, okay, we're going to require your client to pay a portion of it, but in view of the fact that maybe this is attributing fault for this primarily to Scott, I'm going to make an 80-20 division. I would be speculating if I concluded either that he included it or excluded it. Obviously, when we raised the issue in the post-trial motion, we were concerned that the implication was that it was included. Well, let me ask it this way. Other than the fine here, which is pretty significant, and I can understand your position that it shouldn't be considered at all, what would account for an 80-20 split in this case? I think that one of my third arguments here is going to be when the judge looked at the big picture here. One of the things when you look at abuse of discretion cases, of course, which you've all been involved in at the trial court level and the appellate court level, one of the things we look at is one of the reasons, of course, that the trial court has such deference is because the trial court sees the big picture. It meets the parties. It hears the testimony. It can establish the credibility of the witnesses. And when you look at this case, we have a situation in which Mr. Walden had been chronically unemployed. He had been convicted of this criminal fraud conviction that his wife testified that she had no knowledge of his activities or no involvement in. When you look at a lot of the debts, Justice Steigman, they're business debts. And testimony established that in this interim unemployment, and as I recall, he was only employed for a while before his contest on custody. And once that was not successful, he moved and was unemployed again. A lot of the debts, the record will indicate, were debts from him attempting something of business, him attempting some kind of venture, or him attempting to generate income, draining their savings account, draining his retirement without her knowledge. Well, if these were all done in good faith but with bad judgment, we see a lot of these kinds of marital things, it would be a little odd to have an 80-20 split under those circumstances, wouldn't it? I think that the magnitude of the business debt, particularly the fact that he had opened accounts under her name without her knowledge or acquiescence, caused the court to conclude directly that a majority of the debts were debts that he had incurred. We're perfectly aware of the case law in which it says that a spouse can be responsible for debts when there's some kind of benefit or they're trying to make a go of it in a business. This record just doesn't match that. This guy was doing things on his own, using the financial resources that he could pull from their accounts. He took care of all their bills. He took care of just transferring money into the account as she needed it or to make it available. She never got the big financial picture. She was kept in the dark. And while I suppose I'm speculating as well, Justice Steigman, I think that would account for the 80-20 split, that there were so many business debts. Well, I'm going to put it this way. In the event we were to agree with you that the restitution fine shouldn't be included in the allocation of marital debt, shouldn't the court be directed on remand to consider to what extent, if at all, that would change its ultimate allocation of the marital debt? Well, it could, and certainly the bankruptcy has a bearing on that, too. One of the issues I made in my final brief, or in my final reply brief, and a picture that, frankly, since I wasn't involved in the bankruptcy and neither was this court, I don't think we have a clear picture, since we're not the bankruptcy court, of exactly what debts were discharged and what debts remain. It may be, since we know there wasn't a house involved from the record, we know there weren't vehicles involved from the record, almost all the debt was unsecured debt. Utility providers, credit card companies, so forth. It may be that the bankruptcy, which from my knowledge of bankruptcy, and I don't practice it at all, so I'll make that disclaimer right up front, but from my understanding of bankruptcy law, what happens here is that unless there are sufficient resources to cover a payment plan, and this was a complete discharge, the unsecured debt would be discharged in its entirety. So one of the issues here may be that all he has left are these criminal sanctions and restitution. Mr. Cox? Sir? Putting aside the issue of restitution, the issue of is it a fair percentage split, issues of what debts may have been discharged by bankruptcy, and just looking at it from the standpoint of the trial court having allocated marital debt on a percentage basis as opposed to on a per-creditor basis, how are the parties to proceed after a judgment like this to satisfy those debts when there hasn't been a specific assignment? And I'm not going to argue what isn't necessarily arguable. The court has not provided that kind of clarity. I think that either the parties should come to some agreement in light of what this court's final order is or whether or not the trial court has another crack at it on how to divide up the debts to see that there's some organized way for them to be addressed and paid pursuant to court order. That we don't have, admittedly. There is this tension. I have a great respect for Judge Flannel, a great respect for him, but I know that you see different styles from your bench all the time in terms of the detail that judges put into their final judgments, and often Judge Flannel does not provide a lot of detail, as I might find in other courts, which is his prerogative. And certainly this is one of those cases where both parties are suffering and that we don't have any clear route to resolve the debt issue. So what's your take on this child support, or the exemption for the children that Judge Flannel addressed, even though counsel is saying that wasn't up for consideration, the tax exemption? If I may return to page 11 of her brief, I know this court doesn't like extensive quoting, but I'm trying to get us an anchor on the dates. If you go back to 11 on her reply brief, I suppose it's somewhat confusing, but she mentions, you know, one of the arguments we made was it's a temporary order. Before custody was resolved, Judge Flannel gave Mr. Walden two exemptions for the three children and one to Rachel. And even in Ms. Wyman's brief, she concedes that one of the things that changed after that order was entered was that my client was granted custody. So if you look on page 11, and I don't want to read extensively, it indicates that the dependency deductions were ordered on May 22, 2013. And I remember being in chambers. I don't know how much of that will be on the record, other than we certainly agree in our briefs that that was the date the temporary order was issued. We just characterize it differently. So on May 22, 2013, when you look in the last paragraph of her reply brief,  her own language indicates that on May 29, which is after that date, I guess that's 2012, forgive me, I misspoke. Prior to the custody determination, there was this temporary order granting him the two exemptions. So he's granted custody on May 29, and it's almost a year later on May 22, 2013, as this paragraph indicates, that he enters the final order in terms of the deductions. So our position on that was the court didn't finalize. It made perfect sense. There was an intervening factual event. She gained custody after the original order. So what sense would it make if a gentleman was on unemployment and he didn't have funds to qualify for a tax benefit? He certainly can't qualify under federal law by providing more than 50% of the benefit. I certainly recognize Illinois court's latitude in making a specific finding and changing that, but that did not happen in this case. But by the time Judge Final dealt with that as a final issue, now she had custody of all three children and very little support from Mr. Walden to take care of those children. So I think it was perfectly within the court's prerogative and not an abuse of discretion. An issue has been raised on appeal that the court aired by refusing to reduce Scott's child support obligation following his unemployment. Was there any evidence presented about whether that was willful on his part or he lost his job due to good faith or what? My recollection, and I believe it's supported by the record and is in my brief, is that he voluntarily left his employment. And as the court well knows, certainly appearing in front of Judge Schanquiler as many years as I did, he was usually unsympathetic to anybody who was trying to lower child support. If you voluntarily left your employment or quit your job. This was a situation in which Mr. Walden had a track record of going in and out of employment situations. And I believe that Judge Flannel found that he had left his employment voluntarily and of course case law indicates that he's not required to lower child support under those circumstances. Was there some evidence presented that this was this at the three-day trial that we heard reference to earlier concerning his employment situation? As I recall. Do you think it was at that point? I believe so, Your Honor. Okay, go ahead. So, I believe one of the things on my first point, and that is the criminal fines and restitution. Again, reading from Ms. Wyman's brief. I was surprised we didn't find any Illinois case law on point. I quoted, of course, the United States Supreme Court opinion that basically indicates that it's an in personam judgment and not in rem. I quoted some other cases that indicated that if a spouse is aware of and buys into, as with Illinois law, if it were on point, these business ventures and has knowledge of it that it's not unfair to hold her responsible. Ms. Wyman states on page two of her reply brief, even if the court rules that Rachel shouldn't be liable for the fines that Scott was ordered to pay, she should be liable for the restitution that Scott is paying from the criminal case. Like in Capasso, Rachel shared in the pursuit of marital wealth that Scott received as a result of the work that he eventually pled guilty to. This is not supported by the record. This assumes facts that are not in evidence. This directly contradicts the record. Ms. Walden did not know about this behavior. She didn't know about most of the debts. She found out about a lot of these things at trial. So this is certainly not a situation, as Ms. Wyman would assert that it is, where she had knowledge and acquiescence of all the circumstances that led to their financial burden. This is something that he did behind the scenes. She was not prosecuted. She was not charged. She was not involved and didn't have any knowledge until after he was arrested. That's what the record will support. So it would be patently unfair and an abuse of discretion to hold an innocent spouse, particularly one that's responsible for the three children, for a financial burden that would basically depress their financial situation indefinitely, perhaps the rest of the children's lives. And that's one of the things I want the court in sum here to look at. I told you that there were problems with Mr. Walden's credibility and his employment and what he did with money and so forth. Everybody has a right to appeal. Everybody has a right to litigate these issues. I respect that. I respect the process. But the trial court's judgment and ultimately your judgment is going to have a very big impact on these three innocent children. If there's anybody innocent in this case, it's the children. And Mr. Walden appears to want to remain unemployed, to keep his child support at the lowest possible level while achieving the tax benefits and gleaning additional reimbursement out of Ms. Walden for debts, for personal property, and for other types of reimbursements. My client maintained the marital home when Mr. Walden was moved out because of the order of protection. My client has maintained custody, often without very much help from Mr. Walden in this case. So the big picture that the trial court saw in this case was that my client had stepped to the plate and was taking care of these children, and Mr. Walden's anything ranging from misconduct to malfeasance to inability to hold a job and to act financially responsible did not provide stability. I think it ultimately played a role in the custody decision as well. I want to see if I answered the questions that you raised with Ms. Wyman, and then I'm happy to yield back my time. I think we've dealt with the issue of the timing of the order and so forth, at least as far as my recollection. And I think that's it. If you have any further questions, I'd be happy to address them. If not, I'll be seated. All right. Thank you, Mr. Cox. Thank you, sir. Ms. Wyman, rebuttal. Thank you. I want to address the issue of this dependency deduction issue first, and the issue, the question that keeps coming up about the trial. The dependency, the order on dependency deduction, which is a part of the appendix, was entered, let's see, sorry, dependency deduction was entered in 2013. Was it that 2000? That might be right, because I think it was maybe payable, 2012 payable in 2013. Yes, that's correct. I would note in the record, and I should apologize, as Mr. Cox pointed out, in my reply brief on page 11, I do, I think there is a typo, because on page 11, as Mr. Cox pointed out, I stated, and I'll show you that it was inaccurately, and I apologize, on the bottom of page 11, Rachel was awarded custody of the party's three minor children on May 29, 2012, with the court's memorandum of decision. If you go to C448, which is the accurate citation, it's actually October 9, 2012. October 9, 2012 is when the court's memorandum decision is entered, the three days of trial having taken place, I believe, shortly before then. And the court then, in its memorandum decision, October 9, 2012, at C448, states the court having had the opportunity to consider evidence presented at trial exhibits the in-camera interview previously conducted of minor children and reviewing the written arguments presented at the court's direction. And then it grants, the only thing that the court talks about is granting custody of the children to Rachel Walden. But that was in hopes that the parties would be able to reach an agreement as to the other issues, because custody was such a huge part of it. So that doesn't necessarily imply that there was no evidence on these other issues at those three hearings. I suppose that one can argue, as Mr. Cox is arguing, that there wasn't, that there was evidence. My recollection is that there wasn't, and that's why they weren't three days of testimony at about $1,000 a pop wasn't ordered, because this was just a custody issue that wasn't cited. The memorandum, the decision then, sorry, the memorandum order that was entered with regard to the dependency deductions occurred after the court's memorandum decision on, memorandum decision with regard to custody. So the idea that the facts had changed because the, that custody hadn't been decided before and now it was, is just, it is not, does not accurately reflect the calendar that shows that custody was entered, permanent custody entered October 9, 2012, and the decision as to dependency deductions was not entered until the following calendar year, as to 2012 and on. What does the record show with regard to his employment status as to whether he voluntarily left it or left for other reasons? There was, with all due respect, there was no testimony either in support of it or contrary to it suggesting that it was voluntary or involuntary. There was simply, we ran out of, with all due respect, with the 45 minutes, we ran out of time and didn't have the testimony on whether it was voluntary or involuntary. Now his petition, his financial affidavit that was filed as part of the record and as part of this record of appeal and which the court can consider did show the reduction in his income as a result of the, his unemployment and that was filed along with the petition to modify child support several months after he presented that suggested his unemployment at that time was a voluntary unemployment. Well, isn't it your burden to show that it wasn't if you're asking for a reduction in child support? I believe it's the, there's a burden to show that it wasn't, yes, I think that's correct. And we simply didn't have that time to do so. Well, did you point out that Judge Flannery needed more time or make an offer of proof or something? I mean, if there's nothing in the record, Counsel, how are we supposed to reverse the trial court's determination? Well, the court can, the appellate court can consider, the trial court can consider the financial affidavits without further testimony of the parties and we had filed that financial affidavit with regard to that. We would request that the court revand that there be a more equitable 50-50 division of debts, that my client be allocated the value of his assets, which were destroyed, which I didn't have an opportunity to address, but which are addressed in my brief and reply brief as well. Thank you. Thank you, Counsel. This case will be taken under advisement and a written disposition shall issue.